# SUPREME COURT—IN EQUITY.

### ISAAC MONTGOMERY *vs.* DANIEL MONTGOMERY.

THE writ of injunction must be specifically prayed for in the bill or it will not be granted.

When the allegations of the bill are based upon the fraudulent conduct of a party, an injunction may be issued as a matter of precaution, although an intention to dispose of the property at issue can not be proved.

The granting or refusal of an injunction rests in the sound discretion of the Court, in view of the nature of the case and of the whole allegations in the bill.

The rule admitted that it is usual to dissolve an injunction, where the whole merits of the bill are satisfactorily denied by the answer, yet there exist exceptions to this general doctrine ; and after the coming in of the answer, the question of dissolution of a special injunction is one, addressed to the sound legal discretion of the Court.

If by the bill and answer questions of law were involved of a doubtful character the injunction should be sustained.

Proceedings at law imposing restraint upon the disposition of property as authorized by the statute, not considered as analogous to the issuing of an injunction in equity.

In the present case, the facts alleged in the answer, being derived from personal knowledge and in direct and explicit denial of the allegations in the bill, the injunction was dissolved.

ALLEN, C. J.

This is a suit in equity, in which the complainant avers that M. Kekauonohi executed and delivered a deed of conveyance to him of a tract of land, called Puuloa on the 7th of September, 1849, and that on the 15th day of the same month he caused to be indorsed on the said instrument the following :

"For and in consideration of the sum of eight thousand dollars, to me in hand, paid by Charles W. Vincent, of Honolulu, Island of Oahu, Hawaiian Islands, the receipt whereof I hereby confess and acknowledge, bargained, granted, assigned, sold and transferred to the said Charles W. Vincent, all my right, title, interest and estate, of in and to the within described estate ; to have and to hold the same to him, his heirs, executors, administrators and assigns forever.

Vol. II.          70

" In witness whereof I have hereunto set my hand and seal this 15th day of September, A. D. 1849.

(Signed,)          ISAAC MONTGOMERY.

In presence of FRANK MANINI, J. O. CARTER."

The registry of the deed and the assignment bear date the 4th day of November, 1854.

He further avers that the said Vincent never paid him the consideration as alleged, but held the estate in trust for the use and benefit of the complainant, receiving for his said trust and management one-third part of the profits of the estate.

It is further alleged in the bill that the stock and furniture were purchased by the complainant, or by his funds ; and further, that the estate was mortgaged by said Vincent to B. F. Angel, for the sum of five thousand dollars, and that the money arising therefrom was received by the complainant and said Vincent, and that the latter gave his note for the amount he had received to the respondent, who, on the 20th of July, sued said note and received judgment thereon ; and further, the said mortgage was paid by raising money on the estate.

The complainant further alleges, that the respondent, his brother, was induced to come to this country by him, that he paid his passage hither, and that he arrived here on the 17th of February, 1855, in very destitute circumstances ; and that on the 20th of June of the same year, said Vincent, by the request of complainant, executed a deed to the said respondent, of said estate, for and in consideration of $15,000 (fifteen thousand dollars) ; and he further avers that the consideration was nominal, that no money was paid to Vincent by respondent, that he was at the time without means, or credit, and that the object of the deed was that the estate might be held by him for the benefit of the complainant, who says that there was no verbal agreement with his brother that he should draw from the receipts of the property one hundred dollars per month ; and that at the end of each year, the respondent should receive for his services one-third of the profits of the business, and the complainant two-thirds ; and that the one hundred dollars per month was to be accounted for on final settlement : that the respondent continued to pay him money, but no settlement has been made ; but of late he refuses to pay him anything, and denies that com-

plainant has any interest in the estate ; and the complainant further alleges that it was expressly understood and agreed, that when he might desire it, the said estate was to be conveyed to him, or to whomsoever he might direct ; that he has made repeated efforts for a settlement, but without success ; that the respondent has offered only to give his notes secured on the estate for ten thousand dollars, payable in seven years, which he regards as wholly inadmissible, as the estate cost him fifty thousand dollars, besides many years of toil and care, since 1842.

Wherefore the complainant prays that said respondent may be summoned to answer, and to render an account of the dealings and transactions appertaining to the Puuloa Salt Works, from the 19th of June, 1855, till the day of filing the account ; that the amount due complainant may be ascertained, and that respondent may be decreed to pay the same, and also to bring into Court all the books and papers and accounts appertaining to the estate, and that he be ordered to convey the estate to complainant.

The complainant further avers that said respondent is carrying away and selling the salt produced on the estate ; and that he is intending to alienate the property on the estate, to the injury of complainant ; and he further prays that said respondent may be enjoined not to sell or dispose of the said land, or any part thereof ; or to sell any of the stock or other property thereon ; and that respondent may be ordered to deliver up to complainant the estate and other property.

The respondent, in his answer, admits that M. Kekauonohi did execute and deliver a deed of Puuloa to the complainant, and that he transferred the same by a certain instrument made on said deed to Charles W. Vincent ; and that the registry was made on the 4th of November, 1854, as alleged.

The respondent further says that he was a resident in England at the time of the date of said deed, and has no personal knowledge of the facts or circumstances attending the said transaction, or of the consideration paid by the said Vincent for said property, but is credibly informed and verily believes, that the consideration of eight thousand dollars, as specified in said deed, was paid to complainant by said Vincent ; and especially

is he confirmed in this belief, from the fact that the complainant has never intimated that said consideration money had not been paid him.

Defendant further answering, saith he has no personal knowledge whether the complainant, as in bill alleged, continued until the 21st June, 1855, to enjoy a large or any portion of the proceeds of the said estate, or whether the same, if true, was, or was not, according to an agreement in bill alleged, as between the complainant and the said C. W. Vincent; or whether the said Vincent in fact held the estate in trust for the use or benefit of the complainant, as in bill alleged; or whether said writing was made for the purpose of enabling the said Vincent to manage the said estate more effectually for the use or benefit of the complainant; or whether the said Vincent received for his alleged management one-third or any other, or what part of the proceeds, of the said estate, but saith this defendant is credibly informed, and verily believes, and therefore avers, that all the said above last-mentioned statements and allegations are without any foundation in fact, and were never alleged by the complainant, in any of the intercourse between them, since defendant·arrived in this Kingdom.

The respondent further avers that he does not know whether the furniture was furnished by ·the complainant, or with his funds, but believes that it was the property of said Vincent, for the reason that complainant never made any claim for it; that the stock of cattle were sold by the express order of the complainant, at auction, for the purpose of raising money to pay costs and expenses of a prosecution which had been pending against him; and that the respondent purchased the same, and paid the money for the purposes aforesaid.

The respondent admits the mortgage of Vincent to Angel, and believes it to have been made by him as the sole and *bona fide* proprietor of said estate, but denies that Vincent gave him his note for any part of said loan, but that the note on which the respondent obtained judgment against him was for an entirely different consideration, and wholly unconnected from the Puuloa estate.

The respondent further says that the mortgage referred to in the bill, to Angel, was paid by his note and mortgage to said

Angel. He admits that he came to this country at the intimation of complainant, but denies that he came in destitute circumstances, for he was skilled in the art of ship-building, as well as having general business qualifications, and with sufficient means at his command to establish himself independently of his patronage ; and he further says that he does not know whether said deed from Vincent was executed at the request of complainant, but denies that the sum of fifteen thousand dollars, as stated, as a consideration in said deed, was merely nominal, but states that it was the price at which he purchased the estate of said Vincent, who sold him the same on time, secured by his negotiable notes and mortgage of the estate ; and he denies further that the intent and object of the conveyance was that he should hold the estate for the use and benefit of the complainant, or for the purpose of enabling himself to manage it with more facility, for the use and benefit of complainant.

The respondent admits that he did not pay any money to said Vincent on account of said purchase, for by the terms of the contract no part of the said purchase money was payable in cash, but the whole amount was received as before stated, and said Vincent informed him that he had transferred said notes and mortgage to the complainant for a valuable consideration, soon after the purchase, and before any money had been paid.

And this defendant further answering saith, he denies the allegation in said bill, to the effect that any agreement, either verbally or in writing, was ever made between the complainant and this defendant, by which complainant should draw from the earnings or receipts of the Puuloa property a sum of $100 per month, or any other sum of money, or by which the complainant was to have any interest in, or share of, the profits of said property or establishment, or that defendant was to keep any account, or make any settlement with complainant, in relation thereto, as in bill alleged ; and also denies the allegations in said bill that this defendant, for a long time, or at all, continued to pay, or ever paid to the complainant, any sum of money, on such pretended agreement, or for any share or interest in Puuloa establishment ; but saith that this defendant did pay, from time to time, very large sums of money to the complainant, as holder of the said promissory notes and mortgage.

The respondent answers and says that the house placed on the estate by complainant was so placed by his request, and not in the exercise of an undoubted right; and further, that the complainant has never been accustomed to examine the books containing an account of the business of the said estate; nor has he ever made a request so to do since respondent purchased the estate. He further denies that there was any understanding and agreement with him that he was to convey the estate to the complainant on his request, or to any one whom he might direct.

The respondent further answers that the complainant has not made any attempts to obtain a settlement with him, in relation to said estate, or the business connected therewith as alleged, or pretended any right to a settlement in relation thereto.

The complainant replies that he does not know whether the respondent executed notes to said Vincent for $15,000, secured by mortgage; neither does he know whether they were transferred to him by indorsement or assignment. The repliant further avers that if they were executed, it was for form only, and no such mortgage is recorded; and further, that for a year from October, 1855, the defendant had possession of all the papers belonging to him, and that, if such papers were executed, and in existence, they are in possession of the defendant.

The complainant replying, further avers that the sum of $145 was never paid by the defendant, and received by the complainant for cattle; nor were the cattle ever sold by plaintiff or bought by the defendant; that many more cattle have been bought since said advertisement for sale, by property, on the estate belonging to complainant, and have been taken for debts due to him; and further, that all the averments in complainant's bill are true.

Upon the coming in of the answer, the counsel for the respondent moved to dissolve the injunction which had been granted to restrain the respondent from conveying the real estate and the personal estate thereon. And contended that the injunction should not have been granted, and ought to be dissolved, on the ground that it is not alleged in the bill that the defendant intends to alienate the real estate, but only the personal property thereon; or that it is in the knowledge of the

complainant that respondent intends to alienate the property. Neither does the bill allege it, on information and belief; but it alleges only that the plaintiff has reason to believe, not that he does believe, that the defendant is intending to alienate property on the estate.

It is very true that an injunction must be specifically prayed for in the bill. It is the uniform practice not to grant this remedial process, unless it is so. This constitutes an exception from the general doctrine, as to the efficacy to the prayer for general relief; and there is some reason for this exception, for it has been truly said that the defendant might make a different case by his answer against the general words of a bill, from what he would have done against the specific prayer for an injunction.

The injunction in this case was prayed for specifically in the bill, and this prayer was based not upon any averment of knowledge of the intention of the respondent to make sale, but upon the alleged merits of the bill, and the legal apprehension that the respondent might be induced, by the suit, to place the title of the estate in other persons. The allegations, as contended for by the respondent, would strengthen the prayer for an injunction, especially if supported by affidavits, because there would be reason for dissolving this injunction, if it was in proof that the respondent was negotiating to sell and convey the estate, either real or personal; except the personal estate in the ordinary course of business.

If the allegations in the bill are true, the respondent should convey the estate to the plaintiff, for he holds it in trust, at the will of the complainant, and after demand, the respondent should state his account, and make his conveyance, and there would be perfect justice in restraining the sale under such a state of facts. I do not regard the allegations in cases like the present, as necessary as contended for by the respondent's counsel, of knowledge that he intends to sell. If such intention is necessary to be alleged, it is necessary to be proved. Those most adroit and skilled in fraud would be careful not to permit any intention to be discovered. But when the allegations are based on the fraudulent conduct of a party, as a matter of precaution, an injunction may be issued, although the party cannot prove any effort or intention to sell.

I do not regard the authorities cited by the respondent's counsel as sustaining the position assumed by him. It would be a restraint upon the action of the Court, by which innocent parties might seriously suffer. While courts should be certainly careful in issuing writs of injunction, it should not be placed within the power of an adroit and skillful man to prevent it, by taking a course which would prevent proof of a knowledge of his intention to sell. But, I regard the granting or refusal of an injunction before answer as a matter resting in the sound discretion of the Court, in view of the nature of the case, and of the whole allegations in the bill; and I regard a specific prayer for an injunction in this case as sufficient, without the allegations as contended for in the bill. There are many cases when this intention should be alleged and proved before an injunction should be imposed on one's business, but this is not of that class of cases. I know of no authority which makes it necessary in a case of this character; and if there was, I should hesitate to follow it in all cases, for it might lead to great inconvenience, additional expense of litigation and delay, and, perhaps, irreparable mischief.

It is contended, further, that all the equities of the bill, having been fully and unequivocally denied by the answer of the respondent, that therefore the injunction ought to be dissolved. It is undoubtedly true, that if the whole merits are satisfactorily denied by the answer, the injunction is ordinarily dissolved. But there are, as Mr. Justice Story says, in Poor *vs.* Carleton (3 Sum. Rep., 74), exceptions to the doctrine, and these, for the most part, are uniformly resolvable into the principle of irreparable mischief, such as cases of asserted waste, or of asserted mismanagement, in partnership concerns, or of asserted violations of copyright, or of patent rights. In cases of this sort, the Court will look to the whole circumstances, and will continue or dissolve the injunction, in the exercise of a sound discretion.

He says, further, " I confess that I should be sorry to find that any such practice had been established as that a special injunction should be dissolved upon the mere denial by the answer of the whole merits of the bill. There are many cases in which such a practice would be most mischievous—nay, might

Isaac Montgomery *vs.* Daniel Montgomery.

be the cause of irreparable mischief. The true rule seems to be that the question of dissolution of a special injunction, is one which, after the answer comes in, is addressed to the sound discretion of the Court."

The answer to a bill is regarded as true until disproved, and it is a general principle of law, that an injunction will not be continued when it denies all the equities of the bill. (Hoffman *vs.* Livingstone, 1 John. Ch., 211 ; 4 H., 26.) Neither will it be continued when the answer defeats the grounds upon which the injunction was based. (Orr *vs.* Littlefield, 5 Woodbury & Minot, 13.)

The answer responds to the bill positively in all its material allegations. It denies the allegation of trust, of receiving the conveyance for a nominal consideration, but positively alleges a purchase for a valuable consideration, and that he gave notes for $15,000, secured by mortgage of the property. In fact, he denies every material allegation in the bill ; and, therefore, the dissolution must be declared, unless there are some extraordinary circumstances in the case. This is not a denial by a party having no personal knowledge of any of the material facts, but by one who has actual knowledge. As the case stands, the answer disproves the case made by the bill ; for to sustain a bill against an answer which is responsive to the charges of the bill, it must be overcome by the testimony of two witnesses, or of one, and other stringent corroborative circumstances.

It is contended by the counsel for complainant, that the injunction should be issued on the ground of irreparable injury. The bill and answer are so decidedly in conflict, that the Court cannot so far prejudice the case as to interfere with the control and management of the property upon them alone. In cases of this character, to which the counsel refers—such, for example, as the celebrated case of Poor *vs.* Carleton, the answer was made from information and belief, and affidavits filed, showing to the Court that it would be dangerous to have certificates for money in the hands of the respondent, on account of want of responsibility. But I know of no case in equity where title is in controversy that an injunction is continued under the state of facts as exhibited in this bill and answer. It would be in direct conflict with the general principles applicable to pro-

Vol. II. 71

ceedings in equity, that the answer can be overcome only by one witness, and circumstances in corroboration.

The counsel contends further, that the probabilities are with the complainant upon the bill and answer. This is not a sound principle upon which to rest an injunction, and the authorities do not sustain this position. If by the bill and answer questions of law were involved of a doubtful character, the injunction should be sustained; but I am not aware of any question of law arising in the case, if the answer is not overcome.

Reasoning upon principles which govern Courts both in law and equity, when there is a positive, direct, and palpable issue, as in this case, the burden is upon the complainant to sustain his case, and without motion on his part, his case fails; and, therefore, on such an issue, without further proceedings, the probabilities must be considered in favor of the respondent.

The counsel has referred to the analogies of the proceedings at law, in imposing restraint in the disposition of property, as analogous to an injunction in equity. The statute has authorized it in cases of fraud, in a suit at law, or where the party is about to remove the property out of the Kingdom. But in proceedings in equity no such principle has been introduced into the Civil Code; and, therefore, the Court is bound to regard the course of proceeding recognized by the authorities in equity practice, which do not sustain this position.

The counsel contends that no injury could be done to defendant by keeping the injunction on the estate. This may or may not be true; still every man is entitled to his legal rights; and if, under the law, the complainant has no right to restrain the respondent in the management of the estate, the Court should not authorize it. I agree with the counsel that it is not a universal rule that an injunction is dissolved on a denial of the equities in the bill. It depends upon the state of facts alleged in the answer, and whether they are derived from information and belief, or positively from personal knowledge, and whether they are a direct and explicit denial of the allegations in the bill, as they are in this case. There may be other reasons which should influence a Court in cases of this character, as were shown by affidavits in the case of Poor *vs.* Carlton.

The issue between the parties is palpable and direct, and the

material allegations of the bill are denied from personal knowledge, and not from information and belief; and as they are yet unsustained by any testimony, but are in direct conflict with the answer, I am of opinion that the injunction must be dissolved.

Injunction is dissolved with costs.

Mr. Harris for complainant.

Messrs. Montgomery and Bates for respondent.